JOHN H. POILLON, PROSECUTOR, v. ROBERT A. BRUNNER, COLLECTOR OF TAXES, AND THE MAYOR AND COUNCIL OF THE BOROUGH OF RUTHERFORD.

Argued November 7, 1900—Decided February 25, 1901.

1. Assessments for benefits for sewer or other improvements confirmed by the Circuit Court after notice, cannot be attacked in matters of procedure in any collateral proceeding. The order of the Circuit Court will in such cases be deemed conclusive upon all matters within its jurisdiction.

2. Sales of land for an unpaid sewer assessment or any unpaid balance thereof, under section 9 of the supplement to an act for the formation of borough governments, approved March 27th, 1893, cannot be made unless there is failure to pay the same within ninety days after the expiration of the ten years within which the installments are permitted by the statute to be paid.

3. Until the expiration of said ninety days after the ten years, said assessment remains a lien upon the land upon which it is laid.

---

On *certiorari*.

Before Justices VAN SYCKEL and FORT.

For the prosecutor, *Addison Ely*.

For the defendants, *John M. Bell*.

The opinion of the court was delivered by

FORT, J.   The writ in this case brings up the proceedings for sale of the prosecutor's lands for the failure to pay certain sewer assessments made against said lands by the borough of Rutherford.

A number of questions are raised as to the legality of the notices in the proceedings for said assessments and also as to the method of fixing the benefits by the commissioners appointed to assess the same.

These questions we have not considered, for the reason that the proceedings and assessments were confirmed by the Circuit Court, and this writ is not brought to review that action, and the order of confirmation by the Circuit Court will be deemed to be regular and conclusive upon all questions over which it had jurisdiction. *Pamph. L.* 1893, *p.* 460, § 7. Such order can only be reviewed on a direct proceeding in this court for that purpose. *Pamph. L.* 1893, *p.* 464, § 8. It cannot be attacked in a collateral proceeding to review some subsequent action of the municipality, arising out of the performance of a duty imposed by statute upon the city authorities, and which duty is made necessary to protect the city's rights in, or lien upon, the property upon which the assessment was made.

The prosecutor has endeavored to show, by the proofs taken, that he has paid the assessments in question by a settlement with the borough for all arrearages due upon his lands for taxes or assessments.

We do not think the evidence justifies such a finding; on the other hand, it is quite clearly shown that the assessments for which this sale was made were not paid.

The settlement made with the prosecutor is in writing, and is dated August 15th, 1895, and expressly states that the prosecutor, for $5,250, is to have a "release of all my [his] property within the borough free from all encumbrances from lien for taxes or assessments *on that date* exclusive only of taxes for the year 1895."

The assessments under which the sales here in review were made were not confirmed by the Circuit Court until Novem-

ber 15th, 1895, and hence were not a lien upon August 15th, 1895, as the lien only dates, by statute, from their confirmation. This statement of fact as to dates, and the testimony of the borough officials that these assessments were not included in the settlement, is conclusive on the question of payment.

Section 9 of the act under which the assessments here questioned were made provides that they "shall be divided into ten equal installments, and may be paid at the option of the property owner within ten years, one installment for each year, or sooner if he wishes, and the said assessment and any portion thereof remaining unpaid shall be and remain a first lien upon the lands and real estate affected thereby from and after the date of said confirmation of the said report to the same extent as taxes are a lien under the general laws of the state, and they shall be collected in the same way that taxes are collected, and in case of nonpayment of such assessment within ninety days after the expiration of the ten years within which the foregoing installments are permitted to be paid, *then* the said lands and real estate assessed therefor may be sold for the same, or for any balance thereof remaining unpaid of the same, in the same manner provided by such laws for the sale of land for unpaid taxes, and the sale of land *for any unpaid balance* shall be as effectual in all respects as would be the sale of land for the entire assessment; provided, that upon failure to pay any of the said annual installments when the same are due, the whole of said assessment shall become immediately due and payable; and provided, that in no case shall the interest on such assessments exceed the legal rate established by law at the time such report is confirmed." *Pamph. L.* 1893, *p.* 464, § 9.

This section is not clear in its intent as to when sale may be made for failure to pay any installment, notwithstanding that by such failure the whole assessment becomes "immediately due and payable" under the proviso thereof.

The language is that after the confirmation of the report the assessment and any portion thereof remaining unpaid

shall be and remain a first lien upon the lands "to the same extent as taxes are a lien under the general laws of this state."

It is contended that this limits such lien to two years before sale, and if sale is not made within that time there can be no lien.

If this provision stood as the only one in the section, it might be necessary to give it such a construction, but such is not the case, because there is a provision in this section as to when sale of the lands and real estate may be made for the assessment. The statute reads, "and in case of non-payment of such assessment within ninety days after the expiration of the ten years within which the foregoing installments are permitted to be paid, *then* the said lands and real estate assessed therefor may be sold for the same, or for any balance thereof remaining unpaid of the same, in the same manner provided by *such laws* for the sale of land for unpaid taxes." The words "such laws," just quoted, evidently refer to the General Tax laws, to which reference is made in a previous part of this section.

It is quite clear that the only time a sale can be made for an assessment levied under this act is after the expiration of the ten years, for the statute expressly declares that *"then"* (that is, after ninety days after the expiration of the ten years within which the installments are permitted to be paid) "the said lands and real estate assessed therefor may be sold for the same, or for any balance thereof remaining unpaid of the same."

It is true the first proviso of the act makes the whole assessment "immediately due and payable" upon the failure to pay any annual installment. This, however, in our judgment, does not alter the time of sale, which, under the construction we give the act, can only be exercised after ninety days after the expiration of ten years from the date of the confirmation of the assessment. Until that time the assessment remains, by the statute, a lien upon the lands and real estate upon which it is made, for the protection of the municipality, and

if not paid at that time, the borough may enforce its lien by sale, but not before the end of that period.

The sale here was before the expiration of the ten years, and was premature, and will be set aside, with costs.